**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                           :
UNITED STATES OF AMERICA,                                  :   Case No. 22-cr-00151-RCL
                                                           :
                                Plaintiff,                 :
                                                           :
v.                                                         :
                                                           :
                                                           :
LACHE CUFFEY,                                              :
                                                           :
                                                           :
                                Defendant.                 :
                                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## <u>DEFENDANT'S SENTENCING MEMORANDUM</u>

Defendant Lache Cuffey respectfully submits this sentencing memorandum to address the factors that the Court should consider in accordance with the statutory directive that the sentence be "sufficient but not greater than necessary to achieve the purposes of sentencing." 18 U.S.C. § 3553(a). Based on the § 3553(a) factors, Ms. Cuffey respectfully requests a sentence of no more than 151 months' imprisonment, followed by a five-year term of supervised release. Such a term of imprisonment is within the Guidelines range for her offense, substantial, and proportionate to her conduct.

Ms. Cuffey acknowledges that she committed a serious offense, and is prepared to accept the consequences of that offense. As set forth below, the sentence that Ms. Cuffey requests at the low end of the Guidelines is still a substantial amount of time—12 years and 7 months of incarceration. In light of Ms. Cuffey's character, skills, and background, as well as the nature of the offense, a sentence of no more than 151 months' imprisonment is sufficient to achieve the purposes of sentencing.

## FACTUAL BACKGROUND

Ms. Cuffey is a lifelong resident of the Washington, D.C. area.  (*See* PSR ¶¶ 60, 68 (ECF No. 33).)  She is passionate about music and fashion.  (PSR ¶ 92.)  Ms. Cuffey is the "glue to [her] family," who brings the "laughs and fun" to every family function.  (Ex. C, DaMoni Key Letter.)  Her mother, Tawana Key, describes Ms. Cuffey as "a loving individual," who is "always willing to help others."  (Ex. A, Tawana Key Letter.)  Her stepfather, DaMon Key, misses his "early morning talks" with Ms. Cuffey "about life and where she saw herself in the short and long term," and notes that Ms. Cuffey has been "as respectful as any dad could wish for in his child."  (Ex. B, DaMon Key Letter.)  To her half-sister, DaMoni Key, Ms. Cuffey is a "hero, listening ear, and protector" who "lights up any room she enters."  (Ex. C, DaMoni Key Letter.)  Ms. Cuffey is also a loving aunt to DaMoni's one-year-old daughter, who looks just like Ms. Cuffey.  (*Id.*)

Ms. Cuffey was raised by a single mother without assistance from her birth father.  (PSR ¶¶ 60-61.)  Today, she continues to have strong relationships with her family, and is a "loving daughter, sister, niece, aunt, and cousin."  (Ex. A, Tawana Key Letter; *see* PSR ¶ 61.)  Ms. Cuffey's mother, stepfather, and half-sister all live together in Arlington, Virginia.  (*See* Exs. A-C; PSR ¶¶ 63, 65.)  DaMon owns a home healthcare agency, Tawana works as a home health aide, and DaMoni works as an administrative assistant.  (PSR ¶ 63; *see* Ex. B, DaMon Key Letter.)  Tawana and DaMon both credit Ms. Cuffey with supporting her mom through multiple illnesses over the past decade.  (Ex. A, Tawana Key Letter ("I have been diagnosed with several illnesses over the last decade and [Ms. Cuffey] was a great help in assisting me."); Ex. B, DaMon Key Letter ("Lache has helped me tremendously in taking care of her mom in her sickness.").)  Ms. Cuffey also helped care for her great-aunt, whom she lived with for nine years and whom she considers "a second mom."  (PSR ¶ 68.)

Throughout her life, Ms. Cuffey has suffered from mental health issues, trauma, and resulting substance abuse.  (*See* Ex. A, Tawana Key Letter (Ms. Cuffey "has struggled with mental health and never actually got the necessary help"); Ex. C, DaMoni Key Letter (Ms. Cuffey "has dealt with a lot in her life that I for sure know has affected her mental health").)  She has also continuously sought out programming and treatment for these issues.  Ms. Cuffey was diagnosed with bipolar disorder in 2018.  (PSR ¶ 75.)  She tried taking medication, but it "made her feel depressed and tired."  (*Id.*)  Instead, Ms. Cuffey turned to alcohol "as a coping mechanism" to self-medicate her anger management issues.  (PSR ¶ 76.)  Ms. Cuffey's substance abuse escalated after two close friends were killed in 2016 and 2021.  (PSR ¶ 81; *see* Ex. A, Tawana Key Letter (Ms. Cuffey "has lost a lot of friends over the last 5 years and has had to deal with death more than a person her age should ever experience").)

At the time of her arrest, Ms. Cuffey reported "daily," "problematic," and "heavy" use of alcohol and marijuana "to cope with her sadness."  (PSR ¶¶ 80-81.)  She felt "like [she] was lost" and "couldn't find [her]self."  (PSR ¶ 81.)  But during her period of incarceration, Ms. Cuffey has gotten clean and sought out more effective treatments for her mental health issues and trauma by "participating in daily programming, which includes anger management workshops and trauma counseling," and attending "daily substance abuse groups."  (PSR ¶¶ 76, 83.)  She also spent time living in a unit with intensive, all-day programming focused on treatment and life skills.  Ms. Cuffey has new clarity from being substance-free, and, with the help of counseling, she has developed a better understanding of her mental health issues and more productive tools to deal with her anger and other emotions.  She intends to continue seeking such counseling and programming once she is sentenced and incarcerated.  (PSR ¶ 83.)

In addition to her mental health issues and traumatic experiences, Ms. Cuffey has also faced discrimination due to her sexual identity.  Today, Ms. Cuffey has a strong, mutually supportive relationship with her mother, but in the past, that relationship was tested when Ms. Cuffey's mother initially struggled to understand her daughter's lesbian identity.  (PSR ¶ 61.)  In the tenth grade, Ms. Cuffey was "[a]ssaulted by three boys due to her sexuality," and even while she was incarcerated pending sentencing, an officer taunted her by "calling her a boy." (PSR ¶¶ 78, 84.)

After attending seven separate schools in the five years from seventh to eleventh grade, Ms. Cuffey dropped out without her high school diploma, leaving her with limited career prospects and untreated mental health and substance abuse issues.  Ms. Cuffey's first adult criminal conviction occurred in 2009, when she was nineteen years old.  (PSR ¶ 37.)  A police officer broke up a game of craps and Ms. Cuffey "scratched [him] on the arm in attempts to get away." (*Id.*)  Ms. Cuffey's subsequent convictions were for non-violent offenses: selling small amounts of cocaine ($20 worth in 2011 and $30 worth in 2016) (PSR ¶¶ 38, 41), a gun charge in 2011 (PSR ¶ 39), and failure to appear at a court hearing in 2015 (PSR ¶ 40).  These four non-violent convictions make up the entirety of Ms. Cuffey's criminal history score.

Despite the many difficulties she has faced in life, Ms. Cuffey has a strong employment record.  At the time of her arrest, Ms. Cuffey was employed as a crossing guard at Cardozo High School.  (PSR ¶¶ 87, 89.)  Ms. Cuffey has also done maintenance work for Georgetown Hospital and worked for Crystal Skating Rink in Temple Hills, Maryland.  (PSR ¶ 90.)  At the same time, Ms. Cuffey has continued to pursue her passion for music.  She has recorded several songs and music videos, and used songwriting to mourn the deaths of her friends and process those traumatic experiences.  Ms. Cuffey looks up to other female rap artists, and still has dreams of

working in the music industry, but she also has more practical goals for her release, such as finding "a better group of peers" and "working for Metro or returning to Georgetown Hospital to work." (PSR ¶ 92.) Ms. Cuffey's stepfather intends to provide Ms. Cuffey with employment at his home healthcare agency, a job that will draw on the skills Ms. Cuffey developed while caring for her mother and great-aunt in times of poor health. (Ex. B, DaMon Key Letter; *see also* Ex. A, Tawana Key Letter.)

On November 29, 2021, Ms. Cuffey committed the instant offense, which is her first federal charge and is far more serious than any of her previous convictions. Ms. Cuffey and Eric Watson[1] entered a taxi driver's vehicle and drove him to several ATMs in an attempt to take out money using his credit cards. (PSR ¶¶ 13-17.) Mr. Watson assaulted the taxi driver several times, and the taxi driver ultimately required hospitalization. (PSR ¶¶ 13-18.) Ms. Cuffey and Mr. Watson fled in the taxi, leaving the taxi driver behind, and drove to a gas station. (PSR ¶¶ 17-19.) With Ms. Cuffey's encouragement, Mr. Watson stole a second vehicle by brandishing a gun at the driver. (PSR ¶ 19.) Mr. Watson drove away in the taxi cab while Ms. Cuffey drove away in the second vehicle. (*Id.*) Ms. Cuffey was arrested on May 23, 2022. (PSR at 1.)

Ms. Cuffey has accepted full responsibility for her conduct, including by pleading guilty to one count of kidnapping on October 5, 2022. She deeply desires another chance to be a productive member of society and spend time with her family, including her baby niece.

## ARGUMENT

In deciding the appropriate sentence, the "overarching duty" of the Court is to determine a sentence that is "sufficient, but not greater than necessary" to serve the purposes set forth in

---

[1] Mr. Watson has pleaded guilty to one count of kidnapping for his role in the offense. *United States* v. *Watson*, No. 21-cr-000715-RCL (D.D.C.).

§ 3553(a)(2).  *Pepper* v. *United States*, 562 U.S. 476, 493 (2011) (quoting 18 U.S.C. § 3553(a)(2)).  In arriving at a sentence, the Court should consider "all of the § 3553(a) factors"—including the nature of the offense and the history and characteristics of the defendant—and "make an individualized assessment based on the facts presented."  *Gall* v. *United States*, 552 U.S. 38, 49-50 (2007).  Courts engage in this holistic, individualized review because "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings," a study that can sometimes "mitigate" the ensuing punishment.  *United States* v. *Brown*, 892 F.3d 385, 404 (D.C. Cir. 2018) (per curiam) (quoting *Gall*, 552 U.S. at 52).

The facts presented here support a sentence of imprisonment of no greater than 151 months (*i.e.*, 12 years and 7 months), which is a substantial sentence within the Guidelines range. Such a sentence is sufficient but not greater than necessary to meet the objectives of sentencing under § 3553(a), and a longer sentence would be disproportionate and would not reflect Ms. Cuffey's individualized circumstances.

### A.    Consideration of Ms. Cuffey's History and Characteristics Confirms that a Sentence of No More than 151 Months Is Appropriate Here.

As the Court is aware, a sentencing court may consider any "information concerning the background, character, and conduct" of the defendant, including age, educational and vocational skills, mental and emotional conditions, and lack of guidance as a youth.  18 U.S.C. § 3661. Indeed, the D.C. Circuit has cautioned that "*[n]o limitation* shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  *United States* v. *Rhodes*, 145 F.3d 1375, 1381 (D.C. Cir. 1998) (emphasis

in original) (quoting 18 U.S.C. § 3661).  Here, Ms. Cuffey's history and personal characteristics support a sentence of no more than 151 months.

As recounted in detail above, Ms. Cuffey has lived through difficult circumstances.  She grew up without her birth father, struggled with untreated mental health and substance abuse issues, dealt with violence in her community and the deaths of two close friends, and faced family difficulties and discrimination due to her sexual identity.  *See Penry* v. *Lynaugh*, 492 U.S. 302, 319 (1989) (explaining the belief "long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional or mental problems, may be less culpable than defendants who have no such excuse").  Despite these difficulties, Ms. Cuffey has built strong family relationships and tried to be an employed, productive member of society.  She has also sought out treatment programs and job training.  Ms. Cuffey's ability to be "job ready" is appropriately considered as part of the § 3553(a) factors, which will make her a better candidate for employment upon her release.  *See United States* v. *Johnson*, 2022 WL 2866722, at *13 (D.D.C. July 21, 2022) (taking into account the "several vocational and life skills courses" the defendant had completed, which gave the Court "confidence that he will be able to find gainful employment after he is released").  In fact, Ms. Cuffey's stepfather intends to offer her employment as a home health aide.  (Ex. B, DaMon Key Letter.)

This is by far Ms. Cuffey's most serious conviction, and it is her first federal conviction.  It has been a wake-up call for Ms. Cuffey, who is now clean from substances and has had time to reflect on her actions.  Furthermore, although Ms. Cuffey does not dispute her criminal history, "a district court may conclude that the criminal history category overstates the severity of the defendant's criminal history."  *United States* v. *Collington*, 461 F.3d 805, 808 (6th Cir. 2006).

Here, Ms. Cuffey's criminal history category has been inflated by a series of non-violent offenses.  Ms. Cuffey's criminal history score is made up of five points for low-level drug offenses (selling $20 worth of cocaine in 2011 and $30 worth of cocaine in 2016); two points for a firearms charge in 2011; and  two points for a failure to appear in 2015, resulting in a criminal history score of nine and a criminal history category of IV.  (PSR ¶¶ 38-42.)

Finally, Ms. Cuffey's age is a relevant consideration under § 3553(a).  Even Ms. Cuffey's requested sentence of 151 months means she would be 44 years old upon release.  Ms. Cuffey's advanced age upon the time of her release makes it unlikely that she will be a recidivist.  *See* U.S. Sentencing Comm., *Older Offenders in the Federal System* (July 26, 2022) https://www.ussc.gov/research/research-reports/older-offenders-federal-system (finding, among other things, that "as offenders' age at sentencing increased, recidivism rates decreased"); *Five Things About Deterrence*, Nat'l Inst. Justice, U.S. Dep't of Justice, 2 (May 2016), https://nij.ojp.gov/topics/articles/five-things-about-deterrence (noting a "steep decline" in criminal behavior "at about age 35").

Ms. Cuffey's background, skills, character, and age do not excuse her criminal conduct. But they mitigate her culpability and, in keeping with the importance of maintaining sentencing proportionality, reinforce that a sentence of no more than 151 months would comport with the requirements of § 3553(a).

**B.    A Sentence of 151 Months Serves the Objectives of 18 U.S.C. § 3553(a)(2).**

Finally, this Court is required to impose a sentence that reflects the seriousness of the offense and promotes respect for the law, while also providing just punishment, deterring criminal conduct, and protecting the public from any future criminal conduct.  18 U.S.C. § 3553(a)(2).  The proposed imprisonment term of 151 months, followed by a five-year period of supervised release, will accomplish these objectives.

There is no doubt that Ms. Cuffey will serve a substantial time in prison for the offense (far more than she has ever previously served).  Even the low end of the Guidelines is twelve years and seven months—undoubtedly a meaningful and substantial punishment even for a serious offense.  This is especially true where, as here, there is no evidence that Ms. Cuffey herself inflicted any violence.  (*See* PSR ¶ 21 (noting that, although "it appears Ms. Cuffey and Mr. Watson worked in tandem . . . Mr. Watson is accountable for assaulting the victim")).)  And Ms. Cuffey herself has demonstrated her respect for the law in pleading guilty to the offense and accepting responsibility for it.  A sentence of 151 months' incarceration—more than a decade— is a just punishment for Ms. Cuffey's offense.

Finally, the proposed term is more than sufficient to deter Ms. Cuffey from future criminal conduct and to protect the public.  As mentioned, Ms. Cuffey will still serve a substantial prison sentence, and increasing the length of a sentence results in a drastically diminishing deterrent effect generally.  *See Five Things About Deterrence*, *supra* ("Some policymakers and practitioners believe that increasing the severity of the prison experience enhances the 'chastening' effect, thereby making individuals convicted of an offense less likely to commit crimes in the future.  In fact, scientists have found no evidence for the chastening effect.").  This is especially true where the defendant already faces more than a decade of incarceration.

## <u>CONCLUSION</u>

Twelve-and-a-half years of incarceration is a serious punishment that is within the Guidelines range and will more than adequately deter Ms. Cuffey from any future wrongful conduct.  Accordingly, for the reasons listed above, Ms. Cuffey respectfully requests that the Court impose a sentence of no more than 151 months' imprisonment, followed by a five-year period of supervised release.

Dated:  March 3, 2023                    Respectfully submitted,

                                         */s/ Madeline B. Jenks*
                                         Kamil R. Shields (D.C. Bar No. 1674318)
                                         Madeline B. Jenks (D.C. Bar No. 1671314)
                                         SULLIVAN & CROMWELL LLP
                                         1700 New York Avenue, N.W. Suite 700
                                         Washington, D.C.  20006-5215
                                         Telephone: (202) 956-7500